UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kenneth Daywitt, on behalf of all members of the Jewish Group,<br><br>Plaintiff,<br><br>v.<br><br>Jodi Harpestead, et al.,<br><br>Defendants. | Case No. 21-cv-01218 (SRN/DTS)<br><br><br>**Memorandum, Opinion, and Order** |

Kenneth Daywitt, Minnesota Sex Offender Program, 1111 Highway 73, Moose Lake, MN 55767, Pro Se.

Anthony R. Noss, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, Saint Paul, MN 55101, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 13] filed by Defendants. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

I. BACKGROUND

A. Procedural History

Plaintiff Kenneth Daywitt, a patient civilly committed to the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota, commenced this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, against various state officials for alleged violations of Plaintiff's constitutional rights. (*See generally* Am. Compl. [Doc. No. 22].) Plaintiff

1

brings this case on behalf of himself and all members of the MSOP Jewish group. (*See id.* ¶ 1.) The Defendants are Jodi Harpstead, the Commissioner of the Minnesota Department of Human Services ("DHS"); Nancy Johnston, MSOP's Executive Director; and David Clanaugh, MSOP's Volunteer Services Coordinator. (*Id.* ¶¶ 9–11.) Plaintiff seeks declarative and injunctive relief and unspecified compensatory damages. (*Id.* ¶ 5.)

**B.     Factual History**

As an MSOP patient, Plaintiff is committed to the custody of DHS for an indefinite period of time. (*Id.* ¶ 8.) DHS uses the facility at Moose Lake to operate MSOP. (*See id.* ¶¶ 3, 8.) MSOP treats persons, like Plaintiff, committed by the courts as sexual psychopathic personalities or sexually dangerous persons under the Minnesota Commitment and Treatment Act. (*See id.* ¶ 3; *see also* Minn. Stat. § 246B.02; Minn. Stat. § 253B.) Plaintiff alleges violations of his First and Fourteenth Amendment rights based on religious discrimination that he has experienced, and continues to experience, due to MSOP's COVID-19 policies. (Am. Compl. ¶¶ 35–48.)

Plaintiff is a member of the Sephardic Orthodox Jewish faith, which requires him "to participate in ceremonial Jewish year cycle events such as the holy day services, High Holy day services and Shabbat services." (*Id.* ¶ 13.) Prior to filing this lawsuit, Plaintiff entered a settlement agreement with MSOP, signed by Defendant Johnston, which obligates MSOP to live-stream his religious services.[1] (*See id.* ¶¶ 10, 14, 38–39.) Under

---

[1]     This settlement agreement is not attached to the Complaint. Instead, Plaintiff cites *Daywitt, et al. v. State of Minnesota, et al.*, Civ. No. 14-cv-04526 (WMW/LIB) (D. Minn.).

2

that agreement, Plaintiff had no issues accessing live-stream services prior to the COVID-19 pandemic. (*Id.* ¶ 15.)

However, MSOP's policies changed in response to the COVID-19 pandemic, allegedly denying him access to live-stream services. (*See id.* ¶¶ 15–24.) He alleges that the last live-stream services that he accessed were the "Purim services in 2020." (*Id.* ¶ 17.) Since that time, Plaintiff alleges that he has not had access to any religious services, except by means of outdated pre-recorded videos. (*Id.* ¶¶ 18, 20–22.) But he alleges that those pre-recorded videos were intermittent and fail to adequately serve Plaintiff's religious needs. (*See id.* ¶¶ 20–22.) This denial of Plaintiff's rights, he alleges, has continued despite Governor Walz permitting Minnesota citizens to attend religious services. (*Id.* ¶¶ 25–26.)

Plaintiff submitted many written requests to Clanaugh, informing him of the settlement agreement and that the COVID-19 policies violate his First Amendment rights. (*See id.* ¶¶ 29–33.) In response, Clanaugh stated that he is only required to "follow the guidance of the religious volunteer" and that "he is not obligated to follow [the settlement agreement] and can rely on what his superiors" and the volunteer rabbi instruct him to do. (*Id.* ¶ 29–30.)

Because MSOP has failed to provide him access to live-stream services, Plaintiff alleges that he suffers "religious misfortune by not being allowed to participate as normal citizens of society," which has caused "harassment, discrimination and diminished

---

On this motion to dismiss, the Court accepts as true Plaintiff's factual assertion that MSOP agreed to provide live-stream services.

capacity, quality and enjoyment of life." (*Id.* ¶ 33.) Plaintiff also contends that because of his lack of access, he suffers "intellectual and emotional trauma, intellectual and mental anguish, and emotional distress." (*Id.* ¶ 34.) For those reasons, Plaintiff filed this action, alleging violations of his First and Fourteenth Amendment rights. (*See id.* ¶¶ 1–2, 4.)

Under the First Amendment, Plaintiff contends that Defendants have deprived him of the ability to practice his faith by refusing him access to live-stream Jewish services. (*Id.* ¶¶ 35–40.) He also asserts that the pre-recorded services are insufficient because they do not properly align with the Torah and are "not from within proximity of the community he resides in." (*Id.* ¶ 23.)

Plaintiff further asserts that Defendants violated the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 41–48.) In particular, Plaintiff alleges that Defendants have denied him the right "to practice his faith as other human beings within this state," and have denied him the opportunity to use the same "tools as contemporary society." (*Id.* ¶¶ 46–47.)

    **C.**    **The *Allan* Litigation**

Approximately eight months prior to filing this lawsuit, Plaintiff filed a different lawsuit that is currently before this Court, *Allan, et al., v. Minn. Dep't Human Servs., et al.*, Civ. No. 20-cv-1980 (SRN/KMM) (D. Minn).[2] The undersigned also presides over the *Allan* litigation.

---

[2] At this time, the operative complaint in the *Allan* litigation is the Amended Complaint [Doc. No. 29]. Currently pending before the Court in the *Allan* litigation is Plaintiffs' Motion to Amend Pleadings [Doc. No. 54]. In support of that motion, the plaintiffs submitted a proposed Second Amended Complaint. (Mot. Amend Pleadings Ex.

4

In that case, along with 13 other MSOP patients of various religious sects, Plaintiff brought a lawsuit under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, and the First Amendment, against DHS and four state officials, including Jodi Harpstead and Nancy Johnston. (*See generally Allan* Am. Compl.; *Allan* Second. Am. Compl.)  The allegations stem from MSOP's policies adopted in response to the COVID-19 pandemic, including its prohibition on spiritual gatherings and visits from outside spiritual leaders and volunteers.  (*See Allan* Am. Compl. ¶¶ 4–134; *Allan* Second Am. Compl. ¶¶ 5–168.)

Plaintiff Daywitt submitted a declaration in support of the *Allan* complaint.  ((*Allan* Am. Compl. Ex. 1 at 54–55; *Allan* Second Am. Compl. Ex. 2 at 54–55 (together, "*Allan* declaration").)  He alleges that he is a practicing member of the "Sephardic Haredi Orthodox Jewish faith." (*Id.* at 54.)  He also declared that prior to COVID-19, he attended many services including "live stream one Saturday a month for Shabbat services and all High Holy Day services as per a Court settlement." (*Id.*)  He further declared that the COVID-19 restrictions resulted in him "missing 4 Passover streaming sessions, 2 Shavout streaming sessions, [and a] Tish'a B'Av streaming session." (*Id.* at 55.)  Finally, he declared that he had informed "MSOP Volunteer Services Coordinator David Clanaugh . . .

---

2.) As they relate to Plaintiff Daywitt, the Amended Complaint and the Second Amended Complaint are not substantively different.  For clarity, the Court refers to the operative complaint as "the *Allan* complaint," but provides citations to both the Amended Complaint and the proposed Second Amended Complaint.  The Court considers both complaints as matters of public record.  *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quotation marks and citation omitted) (explaining that courts can consider "matters of public record" on a motion to dismiss).

about the fact a court settlement is being violated by not allowing streaming services per the agreement." (*Id.*)

The parties in the *Allan* litigation have engaged in a series of conferences over the course of many months in an effort to resolve their dispute. (*See Allan* [Doc. Nos. 18–24].) During that time, the *Allan* plaintiffs have amended the complaint and stipulated to the dismissal of Count III [Doc. No. 60]. Despite those changes, the allegations, as they related to Plaintiff Daywitt, remain substantively the same. (*Compare Allan* Am. Compl. ¶ 5, 31, Prayer for Relief, *with Allan* Second Am. Compl. ¶ 6, 33–34, Prayer for Relief.) And the *Allan* declaration has been re-submitted, without alteration, in support of the Amended Complaint and the proposed Second Amended Complaint. (*See Allan* declaration at 54–55.) At this time, the plaintiffs' second motion to amend the pleadings is pending before the Court.

### D.    Defendants' Motion to Dismiss

Defendants filed the present motion to dismiss in this lawsuit on July 12, 2021, asserting a variety of arguments for dismissal. (*See* Defs.' Mem. [Doc. No. 15] at 1–2, 9–27.) Defendants primarily argue that the Amended Complaint should be dismissed under the doctrine of claim splitting. (*Id.* at 1, 9–15.) Alternatively, Defendants argue that the claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3] (*Id.* at 1–2, 16–22.) Under Rule 12(b)(1), Defendants contend that the Court

---

[3] Defendants also argue that Plaintiff's state law claims, if any, should be dismissed under Federal Rule of Civil Procedure 8 for lack of clearly pleading those claims. (Defs.'

6

lacks subject-matter jurisdiction because the state officials are entitled to immunity under the Eleventh Amendment. (*Id.* at 2, 22.) Pursuant to Rule 12(b)(6), Defendants argue that the constitutional claims fail to properly plead viable causes of action, citing a host of reasons. (*Id.* at 16–21.) Lastly, Defendants assert that they are entitled to qualified immunity. (*Id.* at 22–24.)

In opposition, Plaintiff argues that this case is different from the *Allan* litigation. (Pl.'s Opp'n [Doc. No. 23] at 7–10.) In particular, Plaintiff contends that the *Allan* litigation is "about the entire practice of Judaism and its removal during the Covid concerns and the immediate case is specific to streaming which was implemented by a settlement agreement." (*Id.* at 7.) Plaintiff also points out that this case names Clanaugh as a defendant while the *Allan* litigation does not. (*Id.* at 9.) He explains that "Clanaugh is the individual who is in reality causing the issue for [Plaintiff] not being able to stream and is the one who is injuring him" and, therefore, "he is the one who the case is more directly pivoted on," which is why Clanaugh is sued "in his official and individual capacities." (*Id.*) Notably, Plaintiff focuses on the settlement agreement, arguing that it creates MSOP's obligation to provide live-stream Jewish services. (*Id.* at 7–9.) Even so, Plaintiff explicitly disclaims that he is alleging a claim for breach of contract: "Defendants attempt to throw a monkey wrench in the action brought by Mr. Daywitt stating he brought a breach of contract claim. Mr. Daywitt never brought a breach of contract in his suit." (*Id.* at 14.)

---

Mem. at 1–2, 24–25.). Because the Court resolves this matter under the doctrine of claim splitting, the Court does not reach this argument.

7

## II.    DISCUSSION

### A.    Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (quotation marks and citation omitted). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quotation marks and citation omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must allege facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere

8

conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Defendants also cite Federal Rule 12(b)(1) as a basis for their motion to dismiss. (Defs.' Mem. at 1). Rule 12(b)(1) states that a party may move to dismiss a claim for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b). Defendants' argument regarding the applicability of Eleventh Amendment immunity implicates the Court's subject-matter jurisdiction over certain claims and is a challenge to the face of the Amended Complaint. As such, the Court's review is "restricted to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." *Beaulieu v. Ludeman*, Civ. No. 07-CV-1535 (JMR/JSM), 2008 WL 2498241, at *5 (D. Minn. June 18, 2008).

### B.   Analysis

The Court finds that Plaintiff's lawsuit is barred by the doctrine of claim splitting.

#### 1.   The Doctrine of Claim Splitting

Claim splitting is when a plaintiff brings "two lawsuits with slightly different theories of recovery." *Pearson v. City of Big Lake, Minn.*, Civ. No. 10-1745 (JRT/FLN), 2011 WL 1136443, at *4 (D. Minn. Mar. 25, 2011). "It is well established that claim-splitting is discouraged." *Sparkman Learning Ctr. v. Arkansas Dep't of Hum. Servs.*, 775 F.3d 993, 1000 (8th Cir. 2014). Instead, "claims must be brought together, and cannot be parsed out to be heard by different courts." *Id.* When analyzing whether a suit constitutes claim splitting, courts use the test for claim preclusion. *J.P. v. BCBSM, Inc.*, Civ. No. 18-cv-3472 (MJD/DTS), 2020 WL 7626655, at *6 (D. Minn. Feb. 24, 2020), *R. & R. adopted*,

2020 WL 1442683 (D. Minn. Mar. 24, 2020). A claim should be dismissed for improper claim splitting when the second suit involves "the same parties or their privies based on the same cause of action." *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 895–96 (8th Cir. 2005) (quotation marks and citation omitted). Accordingly, this Court analyzes whether this lawsuit and the *Allan* litigation involve (1) the same cause of action and (2) the same parties or their privies.

### a.     The Same Cause of Action

Defendants contend that both cases involve the same cause of action. (Defs.' Mem. at 10–13.) Specifically, Defendants note that both lawsuits "center on the alleged suspension [d]uring the COVID-19 health crises of all religious gatherings," including those of the Judaism Spiritual Group. (*Id.* at 11 (internal quotations omitted).) They also reference the *Allan* declaration, in which Plaintiff declares that prior to the pandemic, he watched live-stream services uninterrupted, but not afterwards, and he notes the settlement agreement. (*Id.* at 11–12.)

When deciding whether two lawsuits are based on the same cause of action, courts analyze whether they arise "out of the same nucleus of operative facts." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). As such, the Court reviews the operative facts set forth in the *Allan* litigation and this lawsuit.

The *Allan* litigation focuses on DHS and MSOP's policy to ban plaintiffs' spiritual practices in response to the COVID-19 pandemic. (*Allan* Am. Compl. ¶¶ 11–44; *Allan* Second Am. Compl. ¶¶ 12–46.) The *Allan* plaintiffs specifically draw a contrast between religious practice that was permitted prior to March 13, 2020, with the prohibitions flowing

10

from MSOP's policies adopted in response to the COVID-19 pandemic. (*Allan* Am. Compl. ¶¶ 14–15; *Allan* Second Am. Compl. ¶¶ 13–14.) They further allege that DHS and MSOP have continued banning religious services despite Governor Walz's executive order that permits public worship gatherings under certain conditions. (*Allan* Am. Compl. ¶¶ 15–16; *Allan* Second Am. Compl. ¶¶ 16–17.)

The Judaism Spiritual Group is represented in the *Allan* litigation. (*Allan* Am. Compl. ¶¶ 4, 31–32; *Allan* Second Am. Compl. ¶¶ 6, 33–34.) As that group's representative, Plaintiff Daywitt submitted the *Allan* declaration, which is incorporated into the *Allan* complaint. (*See Allan* Am. Compl. ¶ 31; *Allan* Second Am. Compl. ¶ 33.) In that declaration, Plaintiff declared that he is a practicing member of the "Sephardic Haredi Orthodox Jewish faith." (*Allan* declaration at 54.) He also declared that prior to COVID-19, he attended many live-stream services including on "one Saturday a month for Shabbat services and all High Holy Day services as per a Court settlement." (*Id.*) He further declared that the COVID-19 restrictions resulted in him "missing 4 Passover streaming sessions, 2 Shavout streaming sessions, [and a] Tish'a B'Av streaming session." (*Id.* at 55.) Finally, he declared that he informed "MSOP Volunteer Services Coordinator David Clanaugh . . . about the fact a court settlement is being violated by not allowing streaming services per the agreement." (*Id.*)

These are the same operative facts alleged in this dispute. In the Amended Complaint, Plaintiff alleges that he is a member of the Sephardic Orthodox Jewish faith, which requires him "to participate in ceremonial Jewish year cycle events such as the holy day services, High Holy day services and Shabbat services." (*Id.* ¶ 13.) Plaintiff alleges

11

that prior to the COVID-19 pandemic, he had no issue accessing live-stream services, but now, after MSOP implemented policies in response to COVID-19, his access to live-stream services has been disrupted.  (*See id.* ¶¶ 15–24.)  Plaintiff asserts that he has been denied access to "Shabbat services" and "Holy Day and High Holy Day services" since 2020.  (*Id.* ¶ 24.)  Plaintiff further contends that these restrictions have stayed in place despite Governor Walz issuing an executive order permitting the general public to gather for religious services.  (*Id.* ¶¶ 25–26.)  Lastly, Plaintiff alleges that he has "told Clanaugh through many written requests he must comport with the Court settlement" to which Clanaugh has responded that he must "follow the guidance of the religious volunteer" and "rely on what his superiors" tell him.  (*Id.* ¶¶ 29–30.)  These are the same set of factual circumstances—MSOP's response to the COVID-19 pandemic and its impact on Plaintiff's religious practice, including access to live-stream services—that provide the basis for the *Allan* litigation.

Plaintiff attempts to distinguish this case by arguing that MSOP has a duty under the settlement agreement to give him access to live-stream services.  (Pl.'s Opp'n at 8.)  But this difference has no legal impact.  *See MacIntyre v. Lender Processing Servs., Inc.*, Civ. No. 12-1514 (PAM/SER), 2012 WL 4872678, at *2 (D. Minn. Oct. 15. 2012) (finding that plaintiff's reliance on employment agreement in one lawsuit and discrimination claims in another did not change the claim spitting analysis).  Moreover, Plaintiff's *Allan* declaration—which is incorporated into the *Allan* complaint—explicitly mentions MSOP's violation of the settlement agreement, further confirming that the factual allegations here are the same factual allegations undergirding the *Allan* litigation.  Accordingly, the

settlement agreement does not change the operative facts at issue in this case, and, therefore, the Court finds that this case and the *Allan* litigation involve the same claim. *See Magee v. Hamline Univ.*, 1 F. Supp. 3d 967, 975 (D. Minn. 2014) (finding both claims were "based on her alleged wrongful termination"); *see also MacIntyre*, 2012 WL 4872678, at *2–4 (granting motion to dismiss for improper claim splitting because claims could have been raised in first lawsuit).

### b. Privity

Claim splitting will not bar Plaintiff's claim against a Defendant who was not a party, or who is not in privity with a party, in the *Allan* litigation. *See Daley*, 415 F.3d at 895–96. Neither party disputes that Jodi Harpstead and Nancy Johnston are named defendants in both cases; accordingly, the Court grants Defendants' motion to dismiss with respect to those two Defendants. *See Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987) (collecting cases where second action was barred against parties in the first action). Accordingly, the only remaining issue is whether Clanaugh—who is named as a Defendant in this case, but not in the *Allan* litigation—is in privity with the defendants in the *Allan* litigation.

Whether privity exists "requires careful examination into the circumstances of each case." *McMenomy v. Ryden*, 148 N.W.2d 804, 807 (Minn. 1967) (quotation marks and citation omitted). Generally, "privity involves a person so identified in interest with another that he represents the same legal right." *Id.* (quotation marks and citation omitted). Three types of nonparties will be found in privity with the defendants in a legal matter: "(1) a nonparty who controls the original action; (2) a nonparty whose interests are

13

represented by a party to the original action; and (3) a successor-in-interest to a party." *Sondel v. Nw. Airlines, Inc.*, 56 F.3d 934, 938 (8th Cir. 1995). It is undisputed that Clanaugh does not control the *Allan* litigation, nor is he a successor-in-interest to a party. Accordingly, privity exists if Clanaugh's interests are represented by a party to the original action. To answer this question, the Court must look at the relationship between the *Allan* litigation defendants and Clanaugh.

The *Allan* litigation names five defendants: DHS, Jodi Harpstead, Marshall Smith, Nancy Johnston, and Kevin Moser. (*Allan* Am. Compl. Caption, ¶¶ 6–9; *Allan* Second Am. Compl. Caption, ¶¶ 7–10.) Those defendants are sued in their official capacities. (*Allan* Am. Compl. ¶¶ 6–9; *Allan* Second Am. Compl. ¶¶ 7–10.) Harpstead is sued in her official capacity because she is responsible for DHS, which is responsible for MSOP. (*See Allan* Am. Compl. ¶ 6; *Allan* Second Am. Compl. ¶ 7.) Smith is sued in his official capacity because he "oversees policies and their implementation . . . at Moose Lake" and he is "responsible for and oversees . . . Nancy Johnston." (*Allan* Am. Compl. ¶ 7; *Allan* Second Am. Compl. ¶ 8.) Johnston is sued in her official capacity because she "wrote and implemented the policy at issue banning gatherings of MSOP Spiritual Groups." (*Allan* Am. Compl. ¶ 8; *Allan* Second Am. Compl. ¶ 9.) Moser is sued in his official capacity because he "will enforce policies relating to the MSOP." (*Allan* Am. Compl. ¶ 9; *Allan* Second Am. Compl. ¶ 10.) Notably, the *Allan* complaint specifically references Clanaugh as the person who "facilitates spiritual practices at Moose Lake and implements the policies [that] are directed by Johnston." (*Allan* Am. Compl. ¶ 50; *Allan* Second Am. Compl. ¶ 52.)

In this case, Plaintiff alleges that Clanaugh is MSOP's Volunteer Services Coordinator and that he is responsible for "oversee[ing] religious programming and implement[ing] the streaming services for the Jewish group." (Am. Compl. ¶ 11.) Plaintiff also asserts that Clanaugh "implemented, retained and carried out polic[i]es/practices through the M[S]OP that violated the constitutional, statutory, and common law rights of Plaintiff." (*Id.*) Plaintiff further contends that, in response to written requests to abide by the settlement agreement, Clanaugh stated that he "will follow the guidance of the religious volunteer" and that "he is not obligated to follow these instructions and can rely on what his superiors and the volunteer tell him." (*Id.* ¶¶ 29–30.) Plaintiff has sued Clanaugh in his official and individual capacities. (*Id.* ¶ 11.)

Here, the relationship of Clanaugh and the Defendants in the *Allan* litigation is "so close that [his] addition cannot change the fact that this present action is repetitious," *Fowler v. Wolff*, 479 F.2d 338, 340 (8th Cir. 1973), and thus barred by the doctrine of claim splitting. Clanaugh is an employee of MSOP who interacts with volunteers and their respective programming. Johnston makes the policies and Clanaugh carries them out. No factual evidence exists that he is creating policies. Furthermore, Plaintiff makes no allegations that Clanaugh took independent action outside the policies; rather, he simply alleges that Clanaugh followed the policies. Accordingly, Clanaugh's interests—at least regarding his official capacity—are the same as those of the *Allan* defendants, particularly Johnston. *See Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983) ("A plaintiff may not sue a succession of state employees on the same claim solely on the ground that each employee is not 'identical' to previously sued employees."). Put differently, adding him

15

as a defendant in the *Allan* litigation would not change anything in that case. *See Fowler*, 479 F.2d at 340.

The Eighth Circuit has also applied the doctrine of claim splitting to bar all claims that a plaintiff *could have* raised in a previous lawsuit that arose from the same operative fact. *See Ebert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018). In *Ebert*, the Eighth Circuit considered whether the plaintiff could bring claims arising from the same events that gave rise to the first action, but against new defendants who were not parties to the first action. *Id.* The court explained that claim preclusion occurs "if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance." *Id.* at 783 (quotation marks and citations omitted). And the court concluded that the plaintiff failed to provide any good reasons to justify a second chance. *Id.* at 783–84. The court affirmed dismissal, explaining that the claims in both lawsuits arose out of the same event, and that the plaintiff "could have joined the other police officers as defendants in the first action but failed to do so." *Id.* at 784.

So too here. Plaintiff's *Allan* litigation is currently pending before this Court. Nothing prevented Plaintiff from bringing these claims against Clanaugh in that lawsuit; in fact, Plaintiff could still move the Court to amend the *Allan* complaint to add these claims and to add Clanaugh as a defendant. Moreover, in this matter, Plaintiff has not provided a good reason why Clanaugh was not named as a defendant in the *Allan* litigation, especially considering the fact that the live-stream issue is specifically included in that case. (*See* Pl.'s Opp'n at 3 ("Mr. Daywitt's role in the *Allan* case is one of two representatives for the Jewish group, to represent the issues of COVID restrictions implemented at the M[S]OP

16

on religious practices for the Jewish group which *live streaming is just one of many practices*." (emphasis added).) For those reasons, the Court finds that Clanaugh is in privity with the defendants in the *Allan* litigation in both his official and individual capacities. *See Daley*, 415 F.3d at 897 (finding privity when the defendant in the second lawsuit and the defendant in the first lawsuit had "a close relationship, bordering on near identity").

But even if the doctrine of claim splitting does not bar Plaintiff's claims against Clanaugh in his personal capacity, *see Headley*, 828 F.2d at 1279 ("[L]itigation involving officials in their official capacity does not preclude relitigation in their personal capacity."), such claims would still be dismissed because Clanaugh is entitled to qualified immunity, *see Semler v. McGowan*, No. A19-0710,  , at *5–6 (Minn. Ct. App. Jan. 6, 2020), *rev. denied* (Mar. 25, 2020) (affirming that defendants were entitled to qualified immunity in their individual capacities). Qualified immunity protects government officials from suit and liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Courts consider two factors in determining whether an official is entitled to qualified immunity: "(1) whether the facts alleged or shown, construed most favorably to the plaintiff, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013). A constitutional right is clearly established only if the unlawfulness of the

official's action is apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, Clanaugh is entitled to qualified immunity on both claims. First, Clanaugh has qualified immunity on the equal protection claim because Plaintiff fails to allege that he was treated differently than other *similarly-situated* people. Instead, Plaintiff alleges that he was, and continues to be, treated differently than the general public. (Am. Compl. ¶¶ 46–47.) But MSOP patients are not similarly situated to members of the general public. *Serna v. Goodno*, Civ. No. 04-0615 (JMR/SRN), 2005 WL 1324090, at *6 (D. Minn. June 3, 2005), *R. & R. adopted*, 2005 WL 1705623 (D. Minn. July 7, 2005), *aff'd*, 567 F.3d 944 (8th Cir. 2009) ("Plaintiff is not similarly situated to free citizens."). Consequently, Plaintiff fails to establish a violation of the Equal Protection Clause.

Likewise, Clanaugh is entitled to qualified immunity on the First Amendment claim. Even if Plaintiff could establish a First Amendment violation here, Plaintiff's right to live-stream services is not so clearly established in the law such that Mr. Clanaugh would understand that the denial of access to live-stream services during the COVID-19 pandemic was unconstitutional. *See, e.g.*, *Meyer v. Stacken*, Civ. No. 17-CV-1761 (ADM/KMM), 2019 WL 4675353, at *5 (D. Minn. July 25, 2019), *R. & R. adopted,* 2019 WL 4673941 (D. Minn. Sept. 25, 2019) (finding that plaintiff's alleged right to freedom of association with minor visitors was not "clearly established," and thus finding qualified immunity); *Stone v. Jesson*, Civ. No. 11-cv-0951 (WMW/HB), 2017 WL 1050393, at *1, 4–5 (D. Minn. Mar. 17, 2017) (finding the same as to MSOP's media policy). Accordingly, Clanaugh is entitled to qualified immunity on each of Plaintiff's claims.

## III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Doc. No. 13] is **GRANTED**; and

2. Plaintiff's Complaint is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: March 24, 2022                               s/ Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge